## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JAMES OLEN SIMPSON, JR.,    )
#224823    )
    )
    Petitioner,    )
    )    CIVIL ACTION NO.
vs.    )    3:06-CV-921-MEF
    )
JERRY FERRELL, et al,    )
    )
    Respondents.    )

## ANSWER

The Attorney General of Alabama submits this Answer in response to the

Order to Show Cause issued by this Court on October 17, 2006.

## PROCEDURAL HISTORY

During its Spring 2002 Term, the Chambers County Grand Jury indicted

Simpson for leaving the scene of an accident, in violation of Section 32-10-1 of the

Code of Alabama (1975). Simpson's trial was set for June 19, 2002.

On that date, the trial court called Simpson's case for trial. Upon learning

that Simpson was not present, the trial court issued a warrant for his arrest. The

trial court also determined that Simpson voluntarily waived his right to be present and, therefore, continued with Simpson's trial *in abstentia*. On the same day, the jury found Simpson guilty as charged in the indictment.

On July 31, 2002, the trial court held a sentencing hearing. The court noted that Simpson again failed to appear and determined that he had voluntarily absented himself from the proceeding. Upon receiving evidence that Simpson had one previous felony conviction, the trial court sentenced Simpson to twenty years of imprisonment in the state penitentiary.

Simpson's conviction was affirmed on appeal by the Alabama Court of Criminal Appeals. Simpson v. State, CR-01-2408 (Ala. Crim. App. Aug. 29, 2003) (Mem. Op.). Simpson did not file a petition for rehearing with the Court of Criminal Appeals or a petition for writ of certiorari with the Supreme Court of Alabama. The Certificate of Judgment was issued on September 17, 2003.

Simpson has not sought any relief from the conviction by filing any petition that attacked the validity of his conviction pursuant To Rule 32 of the Alabama Rules of Criminal Procedure. Simpson, however, filed two motions seeking a reduction of his sentence, one on May 16, 2003, and one on November 24, 2004, respectively. The motions were denied on June 5, 2003, and November 30, 2004, respectively.

2

## ISSUES RAISED IN THE FEDERAL HABEAS PETITION

1)    He was denied effective assistance of counsel;

2)    The jury was not instructed that he was not present in the courtroom on the day of trial;

3)    He was not present at trial or sentencing;

4)    The court illegally imposed restitution upon him.

## CLAIMS RAISED ON DIRECT APPEAL

"Did the trial court err and abuse its discretion by trying the defendant in abstentia?

Did the trial court err by not giving the defendant's requested jury charge in mitigation of the alleged offense?

Did the trial court err and abuse its discretion by sentencing the defendant to the maximum sentence of 20 years?"

## EXHAUSTION OF CLAIMS RAISED
## IN THE FEDERAL HABEAS PETITION

### (A)
### EXHAUSTED CLAIMS

Claims 1, 2, and 4 were not raised in the brief filed on appeal in the Alabama Court of Criminal Appeals. These claims must be considered exhausted, however, because Simpson has no viable remedy by which he can now present the claims to the state courts. Claims 2 and 4, if raised in a petition filed under Rule 32 of the Alabama Rules of Criminal Procedure, would be precluded from review under Rule 32.2 (3) and (5) because they could have been raised at trial and on appeal. Claim 1 would be precluded from review because it should have been raised in a Rule 32 petition within one-year of the date his conviction became final.

Claim 3 was raised on direct appeal to the Court of Criminal Appeals, but it became procedurally defaulted when Simpson failed to present it to the Supreme Court of Alabama.


### UNEXHAUSTED CLAIMS

Simpson has presented no unexhausted claims that can now be presented to state courts for review.

**THE STATUTE OF LIMITATION PRECLUDES REVIEW OF SIMPSON'S CLAIMS.**

Simpson's claims are not eligible for habeas corpus review because the one-year limitation period expired before he filed this petition.

In the Anti-Terrorism and Effective Death Penalty Act of April 24, 1996 [AEDPA], Congress amended Title 28 U.S.C. §2244 and instituted a one-year limitation period in which to bring a federal habeas corpus petition. The amendment states:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented form filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Simpson's conviction was affirmed by the Alabama Court of Criminal Appeals on August 29, 2003. Simpson did not file a petition for rehearing or a petition for writ of certiorari with the Supreme Court of Alabama. His conviction became final when the Court of Criminal Appeals issued the Certificate of Judgment on September 17, 2003.   Simpson's one-year period in which to file his federal petition began to run immediately, because he no longer had any brief or petition pending in the state courts. Simpson was not entitled to the ninety-day period in which to file a petition for writ of certiorari in the Supreme Court of the United States because he had not filed a petition in the Supreme Court of Alabama.

Simpson filed this petition on September 30, 2006, more than three years after the state court issued the certificate of judgment on September 17, 2003. Consequently, the one-year period expired before the petition was filed.

## PROCEDURAL DEFAULT

Simpson's claims are also precluded from review in this habeas corpus because the claims are procedurally defaulted. Simpson did not file a petition for writ of certiorari with the Supreme Court of Alabama after the Court of Criminal

Appeals affirmed the conviction. Consequently, Claim 3, which was raised on appeal to the Court of Criminal Appeals, is considered to be procedurally defaulted. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999). In O'Sullivan v. Boerckel, the Court stated that the question on exhaustion is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has properly presented his claims to the state courts. Because we answer this question "no", we conclude that Boerckel has procedurally defaulted his claims." Id. at 848. Because Simpson failed to present his claim to the highest court in Alabama, he failed to properly exhaust his claim. Consequently, his claim is procedurally barred from federal habeas review.

Simpson procedurally defaulted on Claims 2 and 4 because the claims could have been raised on direct appeal from the conviction, as required by Rule 32.2 (3) and (5). In addition, Claim 1 is procedurally defaulted because Simpson failed to file a Rule 32 petition and raise the claim before the expiration of the one-year period under Rule 32.2 (c).

Because Simpson procedurally defaulted on these claims, he is not entitled to review of them unless he shows cause for the default and prejudice therefrom. See Wainwright v. Sykes, 433 U.S. 72 (1977) and Engle v. Isaac, 456 U.S. 107 (1982). To establish cause excusing a procedural default, a petitioner must show that the default resulted from some objective factor external to the defense which

7

prevented him from raising the claim and which cannot be fairly attributable to his own conduct. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Simpson has not shown any cause for his default.

Simpson may still have the claims heard, however, if he proves that the failure to consider the defaulted claims would constitute a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. Id. at 321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims that are defaulted. Id. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). To meet this standard,

> a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

Schlup v. Delo, 513 U.S. at 327.

The court in <u>Schlup</u> observed that

> a substantial claim that constitutional error has caused the conviction
> of an innocent person is extremely rare...To be credible, such a claim
> requires petitioner to support his allegations of constitutional error
> with new reliable evidence--whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence--that was not presented at trial.

<u>Schlup</u>, at 324.

Simpson has not shown that he is actually innocent, and he has not indicated that he can present any evidence that could satisfy the standard set forth in <u>Schlup</u>. Until he does so, his procedurally defaulted claims are foreclosed from federal habeas review.

Whereas Respondents have shown that Simpson is not entitled to review of his claims, this petition should be denied.

# EXHIBITS

1) Copy of Simpson's brief on appeal, Exhibit A;

2) State's brief on appeal, Exhibit B;

3) Memorandum opinion on direct appeal, Exhibit C;

4) Certificate of Judgment, Exhibit D.

Respectfully submitted,

Troy King – KIN047
*Attorney General*

/s/James B. Prude
James B. Prude (PRU005)
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>2nd</u> day of November, 2006, I electronically

filed the foregoing (including exhibits) with the Clerk of the Court using the

CM/ECF system and I hereby certify that I have mailed by United States Postal

Service the foregoing (including exhibits) to the following non-CM/ECF

participants:  <u>James O. Simpson, AIS #224823, Fountain Correctional Facility,</u>

<u>Fountain 3800, Atmore, Alabama 36503</u>.


                            s/James B. Prude
                            James B. Prude (PRU005)
                            Office of the Attorney General
                            Alabama State House
                            11 South Union
                            Montgomery, AL  36130-0152
                            Telephone:  (334) 242-7300
                            Fax:  (334) 242-2848
                            E-Mail:  JPrude@ago.state.al.us


199625/100768-001

11

CR-01-2408

IN THE COURT OF CRIMINAL APPEALS

THE STATE OF ALABAMA

JAMES O. SIMPSON, JR.,                                    APPELLANT

VS.

STATE OF ALABAMA,                                         APPELLEE

---

ON APPEAL FROM THE CIRCUIT COURT OF CHAMBERS COUNTY

OF THE STATE OF ALABAMA

BRIEF AND ARGUMENT IN SUPPORT OF APPEAL

---

Attorney for Appellant

Roland L. Sledge

4002 20th Avenue, Suite B

Valley, Alabama 36854

334-768-4026

EXHIBIT

A

tabbies

## STATEMENT REGARDING REQUEST FOR ORAL ARGUMENT

Pursuant to the Alabama Rules of Appellate Procedure Rule 34(a), Appellant requests oral argument before the Court in this appeal.  Appellant believes oral argument would be of help and assistance to the Court.

Roland L. Sledge
Attorney for Appellant

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . .    ii - iv

Statement of the Case   . . . . . . . . .    1

Statement of the Issues . . . . . . . . .    2

Statement of the Facts  . . . . . . . . .    3-5

Statement of the Standard of Review . . . . .   6-7

Summary of the Argument . . . . . . . . .    8-9

Argument  . . . . . . . . . . . . .    10-20

Conclusion  . . . . . . . . . . . .    21-22

Certificate of Service  . . . . . . . . .    23

Summary of Rulings Adverse . . . . . . . .    24

## TABLE OF AUTHORITIES

<u>CASES</u>                                                          <u>PAGE</u>


<u>Arrington V. State</u>,

     773 So. 2d 500 (Ala. Crim. App. 2000) . . . . .    14


<u>Berness V. State</u>,

     263 Ala. 641, 83 So. 2d 613 (1955) . . . . . . 12, 14


<u>Dowdell V. State</u>,

     615 So. 2d 1277 (Ala. Crim. App. 1993) . . . .    16


<u>Ex Parte Wood</u>,

     629 So. 2d 811 (Ala. Crim. App. 1993) . . . . .    15


<u>Isom V. State</u>,

     37 Ala. App. 416, 69 So. 2d 716 (1954) . . . . .    17


<u>Illinios V. Allen</u>,

     397 U.S. 337, 90 S. Ct. 1684, 25 L. Ed. 2d 353 (1970)    11


<u>Lancaster V. State</u>,

     638 So. 2d 1370 (Ala. Crim. App. 1993) . . . . .    16


<u>Lewis V. United States</u>,

     146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1892) .    11

Martin v. State,
        625 So. 2d 455 (Ala. Crim. App. 1992) . . . . .        19

Meadows V. State,
        644 So. 2d 1342 (Ala. Crim. App. 1994) . . . .        12

Neal V. State,
        257 Ala. 496, 59 So. 2d 797 (1952) . . . . .        11

Pointer V. Texas,
        380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)        11

Powell V. State,
        600 So. 2d 1085 (Ala. Crim. App. 1992) . . . . .        15

Taylor V. United States,
        414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973)        14


CODE SECTIONS AND OTHER AUTHORITIES

Alabama Rules of Criminal Procedure, Rule 9.1(a) . . . .        11

Alabama Rules of Criminal Procedure, Rule 9.1(b) . . . .        13

Alabama Rules of Criminal Procedure, Rule 9.1(b)(i) . . .        13

Alabama Rules of Criminal Procedure, Rule 9.1(b)(ii)   .   13, 14

Alabama Rules of Criminal Procedure, Rule 9.1(c) .  .  .     15

Code of Alabama, §13A-5-9(a)(1), (1975) .  .  .  .  .  .     19

Code of Alabama, §32-10-1, (1975) .  .  .  .  .  .   10, 17, 21

Code of Alabama, §32-10-2, (1975) .  .  .  .  .  .  .  .     10

Code of Alabama, §32-10-6, (1975) .  .  .  .  .  .  .  .     19

United States Constitution, Amendment VI   .  .  .  .  .     11

Alabama Constitution Article 6, 1901   .  .  .  .  .  .      11

## STATEMENT OF CASE

The Appellant, JAMES O. SIMPSON, JR., appeals from a conviction in the Circuit Court of Chambers County, Alabama for leaving the scene of an accident involving death or injuries.

Simpson was arrested and indicted (CC-2002-048) for allegedly committing the crime of leaving the scene of an accident involving death or injuries, §32-10-1, Code of Alabama, 1975.

Simpson was granted indigent status and appointed an attorney for the trial of his criminal charge. A jury trial was conducted before the Honorable Howard Bryan on June 19, 2002 in the Circuit Court for Chambers County, Alabama, Fifth Judicial Circuit. The jury found Appellant to be guilty of leaving the scene of an accident involving death or injuries. The Honorable Howard Bryan, Circuit Judge of the Fifth Judicial Circuit denied the application for probation of Simpson and sentenced Simpson to 20 years for leaving the scene of an accident involving death or injuries on July 31, 2002. Simpson filed a Motion to Dismiss Restitution on or about September 4, 2002. This Motion was denied by operation of law.

Simpson filed a timely Notice of Appeal on or about September 3, 2002.

1

## STATEMENT OF THE ISSUES

DID THE TRIAL COURT ERR AND ABUSE IT'S DISCRETION BY TRYING THE DEFENDANT IN ABSTENTIA?

YES.

DID THE TRIAL COURT ERR BY NOT GIVING THE DEFENDANT'S REQUESTED JURY CHARGE IN MITIGATION OF THE ALLEGED OFFENSE?

YES.

DID THE TRIAL COURT ERR AND ABUSE IT'S DISCRETION BY SENTENCING THE DEFENDANT TO THE MAXIMUM SENTENCE OF 20 YEARS?

YES.

2

## STATEMENT OF FACTS

On or about August 1, 2001, near Lanett, Chambers County, Alabama, the victim, Jerry Cash, was riding his motorcycle with his wife, Dana. After crossing a railroad crossing, Cash was struck from behind by a black Chevrolet Beretta automobile. He was knocked to the pavement and the automobile came to rest on him. Cash's wife turned to see the aftermath of the accident. She did not see the accident occur. She did see the automobile leave the scene of the accident. She did see a passenger in the vehicle but could not see the driver. The driver of the automobile failed to stop and give his name, address, registration number or show his drivers license to the person struck.

Cash was taken by ambulance to Lanier Memorial Hospital and treated for his injuries. He was kept in the hospital for several days.

On August 8, 2001, a warrant for the arrest of Simpson was issued. (C. 1) Simpson was arrested on or about December 1, 2001, and given a bond of $5,000. Simpson did not make this bond until April 29, 2002. (C. 18)

On or about January 15, 2002, counsel was appointed for Simpson. On or about February 15, 2002, the grand jury of Chambers County returned an indictment against Simpson for leaving the scene of an accident involving death or injuries. (C. 15) On March 11, 2002 Hon. Howard Bryan, Circuit Judge, arraigned Simpson. During the arraignment, Judge Bryan told Simpson if he made bond that he should stay in contact with

3

his attorney.

The next regular trial term was to begin on April 29, 2002. This was the day that Simpson made bond. Due to budget and monetary problems of the State, Chief Justice Roy Moore suspended jury trials. However, this suspension was lifted. Judge Bryan scheduled a jury term to begin June 17, 2002. On June 19, 2002, the trial court called for trial the case of State of Alabama V. James O. Simpson, Jr. Simpson did not appear at that time.

At the call of the case for trial, counsel for Simpson informed the Court of the absence of Simpson and of his attempts to contact Simpson. Counsel argued to the Court the constitutional right of a defendant charged with a criminal offense to be present at the trial of his case. The trial court over objection of counsel initiated the trial of Simpson in abstentia. The trial court took the position that Simpson had voluntarily waived his right to be present at the trial of his case. (R. 3-4-5)

After the conclusion of the evidence, defense counsel requested a jury charge be given as to the right of Simpson to leave the scene of the accident if he felt he was in danger. The trial court refused to give the requested charge of Simpson. (R. 109-110)

The jury returned a guilty verdict against Simpson. (C. 22) The trial court issued a writ for his arrest for failure to appear. The trial court heard probation applications on July 31, 2002. The court denied the application for probation

4

and sentenced Simpson to 20 years.  (C. 23)

On September 3, 2002, counsel filed a Motion to Dismiss Restitution.  (C. 50)  This motion was denied by operation of law.

Simpson filed a timely Notice of Appeal requesting relief in this matter to include a remand of this matter to the trial court for a new trial due to errors committed.

## STATEMENT OF THE STANDARD OF REVIEW

This matter is an appeal of the conviction of James O. Simpson, Jr. on the charge of leaving the scene of an accident involving death or injuries in the Circuit Court of Chambers County, Alabama. Simpson appeals on the basis of errors committed at the trial court and abuse of the discretion of the trial court.

In reviewing the appeal of a defendant, this Court must look at the record on appeal. The first standard of review is plain error. This Court can determine error from the record on its own initiative if it is determined that there was error at the trial court and this error was not preserved for appeal. This error must be determined to be harmful or detrimental to the defendant.

An appealed error by the defendant is one that has been preserved. The Court must determine if this error was reversible. In order for the Court to reverse the decision of the trial court, it must find that the error prejudiced the defendant to such a degree that a fair trial was not held.

This Court can determine that error by the trial court is harmless. This can occur when the Court determines that the out come of the trial would have been the same with or without the appealed error.

The trial court is given great discretion in deciding evidential matters and cases. The trial court hears the evidence

6

firsthand.  The trial court is able to view the witnesses and their demeanor in order to determine their credibility. If this Court finds that the trial court abused its discretion, this Court can reverse the trial courts decision.

In this case, there are three issues on appeal.  The first issue has a standard of review as to whether the trial court erred in trying the defendant in abstentia and whether the trial court abused its discretion by trying the defendant in abstentia.

The standard of review in the second issue is whether the trial court erred by not giving the defendant's requested jury charge in mitigation of the offense.

The standard of review on the third issue is whether the trial court erred in sentencing the defendant to 20 years and whether the trial court abused its discretion by sentencing the defendant to the maximum sentence of 20 years.

7

## SUMMARY OF THE ARGUMENT

The defendant/appellant, James O. Simpson, Jr., appeals from a conviction of the offense of leaving the scene of an accident involving death or injuries. §32-10-1, et seq., Code of Alabama, 1975 sets out the offense Simpson is charged with and the penalties. The appeal is on three issues. First, Simpson claims the trial court erred and abused its discretion by trying him in abstentia. The second issue claims the trial court committed error by not giving the requested jury charge. The last issue claims the trial court erred and abused its discretion by sentencing Simpson to the maximum sentence of twenty years.

The first issue concerns the error committed and abuse of the trial court in trying Simpson in abstentia. The law is well founded that a defendant charged with a criminal offense has a constitutional right to be present at the trial of his case. Rule 9.1, Alabama Rules of Criminal Procedure sets out the two ways that a defendant can waive his right to be present at trial. In the present case, Simpson argues that there was no express or implied waiver of his right to be present at the trial. The trial court erred and abused its discretion in trying Simpson in abstentia. This matter should be remanded to the trial court for a new trial.

The second issue present on appeal concerns the trial courts error and abuse of discretion in not giving Simpson's requested jury charge. It has been determined that a person can leave

8

the scene of an accident involving death or injuries if he believes that he is in danger. A statement given by Simpson told that he was scared. It is the province of the jury to judge the facts of the case. The jury should have been able to consider the state of mind of Simpson at the time of the accident. The trial court committed error and abused its discretion by not giving the requested jury charge.

The third issue on appeal by Simpson claims the trial court erred and abused its discretion by sentencing him to the maximum of twenty years. The punishment for leaving the scene of an accident involving death or injuries is the same for a Class C felony. The punishment can be enhanced by the Habitual Offender Act. The State presented a certified copy of Simpson's prior felony conviction. The range of punishment was the same as a Class B felony. This punishment allows for a sentence of not less that two years nor more than twenty years Simpson argues that the trial court erred and abused its discretion by sentencing him to the maximum allowed by law, the twenty years.

Simpson argues that because of the errors committed by the trial court and the abuse of discretion, that his case should be remanded to the trial court for a new trial with the requested jury charge presented to the jury for its consideration. Further, Simpson argues that a sentence of twenty years is excessive and the matter should be remanded to the trial court for a new sentence. Simson requests any other relief to which he may be entitled.

9

ARGUMENT

ISSUE

Did the trial court err and abuse it's discretion by trying the Defendant in abstentia?

YES.

James O. Simpson, Jr. appeals from a conviction in the Circuit Court of Chambers County, Alabama. Simpson was found guilty by a jury of his peers on the charge of leaving the scene of an accident involving death or injuries. §32-10-1 et seq., Code of Alabama, 1975, sets out certain duties and responsibilities on the driver of any motor vehicle involved in an accident. Specifically, §32-10-2, Code of Alabama, 1975, sets out the information to be provided by the driver of the vehicle involved in an accident. The driver is to furnish his name, address, and the registration number of the vehicle he is driving. He shall show his drivers license upon request by the other party involved in the accident. The driver is to render reasonable assistance to any injured person to include arranging for transportation or transporting any injured person to a physician or hospital for treatment.

Simpson was arrested and indicted for violating §32-10-1, Code of Alabama, 1975. At the call of his case for trial,

10

Simpson failed to appear. The trial court decided to proceed with the trial of the case in the absence of Simpson.

Amendment VI, of the United States Constitution and Article 6, Constitution of Alabama, 1901, grants a defendant charged with a criminal offense the right to be present at all stages of the prosecution of the case. Rule 9.1(a), Alabama Rules of Criminal Procedure states "The defendant has the right to be present at the arraignment and every stage of trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing." In <u>Neal V. State</u>, 257 Ala. 496, 59 S. 2d 797 (1952), this Court found "the continuous presence of the defendant from arraignment to sentencing is an essential part of the process for the trial of the defendant, without which the court has no jurisdiction to pronounce judgment against the defendant."

The United States Supreme Court ruled in <u>Illinois V. Allen</u>, 397 U.S. 337, 90 S.CT. 1684, 25 L.Ed. 2d 353 (1970), "The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: 'In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.' We have held that the Fourteenth Amendment makes the guarantee of this clause obligatory upon the States. <u>Pointer V. Texas</u>, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965). One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. <u>Lewis V. United States</u>, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)."

11

Simpson was denied his constitutional right to be present at the trial of his case. In a criminal case, a defendant has certain constitutional rights that must be guarded. A defendant has the right to remain silent, a right to a trial before a duly selected jury, a right to be present at the trial of his case, a right to counsel, a right to cross examine the witnesses of the state, a right to compulsory process. If a defendant desires to enter a guilty plea, he must waive or give up these rights before a judge. The record on a guilty plea must show that the defendant understood his rights and waived these rights without coercion or hope of reward.

The trial court stated "I take the position that Mr. Simpson has decided that the best defense is a good offense and that he has chosen not to appear. So I will take the position that he has waived his right to be present in this case." (R. 4) At the sentencing hearing, the trial court stated "The case went to trial without Mr. Simpson's presence. I made a finding that he had voluntarily absented himself from court and the case was tried to verdict." (R. 127)

In Berness V. State, 263 Ala. 641, 83 So. 2d 613 (1955), it was found that the presence of a defendant is required at every stage of the trial. Further, this presence is essential to the validity of the trial and conviction. In Meadows V. State, 644 So. 2d 1342 (Ala. Crim. App. 1994), it was decided that a defendant cannot be tried in abstentia and Rule 9 prevents the trial of a defendant that is absent from the beginning of his trial. The trial of James O. Simpson, Jr. should not have

12

proceeded once the trial court determined that he was not present.

The defendant can waive his right to be at trial if there is a clear and unequivocal waiver. There is no clear waiver of Simpsons right to appear at his trial. Rule 9.1(b), Alabama Rules of Criminal Procedure, sets out how a defendant may waive the right to be present.

There are two ways a defendant may waive the right to be present. First, Rule 9.1(b)(i) states "With the consent of the court, by an understanding and voluntary waiver in open court or by a written consent executed by the defendant and by the defendant's attorney of record, filed in the case." In the present matter. Simpson did not voluntarily waive his right to appear at the trial of his case. There is no written consent by him or counsel filed in this case. This section does not apply. The trial court may have consented to Simpson's absence. This constituted error on the part of the trial court.

Secondly, Rule 9.1(b)(ii) states: "By the defendant's absence from any proceeding, upon the court's finding that such absence was voluntary and constitutes an understanding and voluntary waiver of the right to be present, and that the defendant had notice of the time and place of the proceeding and was informed of the right to be present." The trial court took the position that Simpson had voluntarily waived his right to be present at the trial of his case under this rule section. There is no basis for the trial court to assume this. There is no evidence to show that the absence of Simpson was voluntary.

13

Counsel for Simpson was questioned by the court to determine what efforts had been made to inform Simpson of the trial date. Counsel stated that he had written letters to Simpson. The original trial term was to begin in April, 2002. Due to financial problems, jury trials were suspended. Another trial term was scheduled in June, 2002 after the financial problems of Chief Justice Moore and Governor Siegleman were resolved. The bond made by Simpson requires that he be in court during the next term. The trial court took the position that Simpson was made aware of the date of the next term.

In Taylor V. United States, 414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973), a defendant may make an express waiver or may waive the right to be present by voluntary absence from the trial. This consent cannot be presumed. It must be affirmatively waived. Berness V. State, 263 Ala 641, 83 So. 2d 613 (1955).

The trial court erred in presuming that Simpson voluntarily waived his presence at the trial of this matter. Rule 9.1(b)(ii) allows an implied waiver only when the defendant has been present at the beginning of the trial and fails to appear at a later stage. This waiver can not be inferred if the defendant had never appeared at the trial. Simpson did not appear at any stage of the trial of his charge. An appearance at his arraignment does not give rise to a voluntary waiver of his right to appear at the trial of his case or any other stage of the prosecution of his case.

In Arrington V. State, 773 So. 2d 500 (Ala. Crim. App.

14

2000), it was ruled that the defendant was present during his bench trial at one point but did not return for the presentation and arguments in his case. It was held that "because the appellant did not affirmatively waive his right to a trial by jury in writing or on the record in open court, the trial court improperly concluded that he had waived that right." In the present case, Simpson did not affirmatively waive any constitutional right that he had.

In Ex Parte Wood, 629 So. 2d 811 (Ala. Crim. App. 1993), it was determined "the decision to proceed in light of a voluntary waiver is discretionary, not mandatory, with the court. The court is in no instance required to proceed." In Powell v. State, 600 So. 2d 1085 (Ala. Crim. App 1992) "The court need not accept accused's waiver where his presence is necessary for identification purposes. In this case, the victim did not identify Simpson. His wife did not identify Simpson. No witness of the State identified Simpson as the driver of the vehicle that left the scene of the accident.

Rule 9.1(c), Alabama Rules of Criminal Procedure give the court a means of obtaining the presence of the unexcused defendant. The trial court can direct any member of law enforcement to bring the defendant before the court if the defendant is not present and has not waived his presence. There was no lack of other cases to be tried on June 19, 2002. This matter should have been continued with a writ for Simpson's arrest issued for his failure to appear.

The trial court erred in proceeding with the trial of

Simpson's case without an express or implied waiver of his right to be present.   The trial court should have exercised restraint and great caution in determining that Simpson's absence was voluntary.   In Dowdell V. State, 615 So. 2d 1277 (Ala. Crim. App. 1993), the trial court's error in both its allowance of jury deliberations and its acceptance of jury's verdict in absence of defendant was reversible.   "Trials in abstentia are generally condemned as violative of every principle of justice and fairness." Lancaster V. State, 638 So. 2d 1370 (Ala. Crim. App. 1993).

The trial court erred and abused its discretion by inferring that Simpson had voluntarily waived his right to be present at the trial of his case.   There is simply no evidence to show an express or implied  waiver of his right to be present.   In order to assure that Simpson's constitutional rights were safeguarded and fairness to the State and to the defendant was upheld, the trial court should have continued this matter until Simpson could have been brought before the court.   The decision of the trial court should be reversed and this matter remanded for further proceeding in accordance with law.

## ISSUE

Did the trial Court abuse it's discretion and commit error

16

by not giving the Defendant's requested jury charge in mitigation of the alleged offense?

YES.

Simpson was charged with leaving the scene of an accident involving death or injuries under §32-10-1, Code of Alabama, 1975. Simpson requested the trial court to give a requested jury charge. (R. 109-111) Counsel for Simpson argued to the court that Simpson had a right to leave the scene of an accident if he thought he was in danger. This Court had ruled in Isom v. State, 37, Ala. App. 416, 69 So. 2d 716 (1954), "Where a motorist involved in an accident did not stay at the scene of the accident and give the information required by this section, his request to instruct the jury that he had the right to leave because he thought he was in danger was improperly refused."

In the statement of Simpson entered into evidence, Simpson told Richard Carter that he was scared. He was scared because some lady was screaming and calling him a bastard. (R.95) The trial court stated that it was not "reasonable to infer from his statement that he was scared of what might happen to him." It is the duty of the jury to draw reasonable inferences from the evidence. The jury should have heard from the court in the charge that they could consider the fact Simpson could leave the scene of the accident if he thought he was in danger.

The trial court erred by not allowing the requested jury charge. The jury is the judge of the facts of the case. It

17

is within the providence of the jury to determine the state of mind of Simpson at the time of the accident. The victim testified that he was a big person. He testified that he weighed about 460 pounds on the date of the accident. (R. 53) He was riding a Harley-Davidson motorcycle. His wife was riding a motorcycle. Simpson stated that he was scared because of the lady screaming and calling him a bastard. This could have been enough to put Simpson in fear of danger to his person. This matter should have been presented to the jury for their consideration.

Simpson believes that due to the trial court refusing to give the requested jury charge that the court erred. Simpson argues that the trial court should have given the requested jury charge in mitigation of the offense. If the jury had been able to consider this charge, the verdict may have been different.

Simpson requests that this matter be remanded to the trial court for new trial on the issue of his guilt in this matter. Simson requests any other relief to which he may be entitled.

ISSUE

Did the trial court err and abuse its discretion by

sentencing the defendant to the maximum sentence of 20 years?

YES.

The penalties for conviction of the offense of leaving the scene of an accident involving death or injuries are set out in §32-10-6, Code of Alabama, 1975. In the present case, the punishment is the same as prescribed by law for a Class C felony because there was personal injury to Mr. Cash. The range of punishment for a Class C felony is not less than a year and a day nor more than 10 years. There is also the possibility of the imposition of a fine up to $5,000.

Under §13A-5-9(a)(1), Code of Alabama, 1975, "In all cases when it is shown that a criminal defendant has been previously convicted of a felony and after the conviction has committed another felony, he or she must be punished as follows:

(1) On conviction of a Class C felony, he or she must be punished for a Class B felony."

The range of punishment for a Class B felony is not less that 2 years nor more than 20 years. There is also the possibility for the imposition of a fine up to $10,000. Simpson argued that a 20 year sentence requested by the State was not mandated by this case. (R. 132) The trial court found the facts to be egregious and sentenced Simpson to the maximum sentence of 20 years. (R. 133)

In Martin V. State, 625 So 2d 455 (Ala. Crim. App. 1992), this Court found that "Sentencing provisions of the Alabama

19

Criminal Code that specifically include the provisions of the Habitual Offender Act do apply to sentencing for a violation of this section when such a violation involves death or injury." Simpson argues that the trial court abused its discretion by sentencing him to 20 years, the maximum allowed under the law. The actions in this case, although wrong, do not give rise to a sentence of 20 years.

Simpson also argues that the trial court erred in sentencing him to the maximum of 20 years. There is no argument that the range of punishment is not less than two years nor more than twenty years. The trial court erred in giving Simpson the maximum sentence of 20 years. There is nothing to be found in the record or the victim's impact statement that would give rise to a 20 year sentence. The victim, Mr. Cash, did not appear at the sentencing hearing. His wife appeared. The victim was out of town working. (R. 127-128) The trial court was critical of Simpson for not appearing at trial or sentencing and made several comments about this. However, there was no mention of the victim not appearing to show the impact of this matter on him.

Simpson requests that this matter be remanded to the trial court for re-sentencing. Simpson requests that he receive any other relief to which he may be entitled.

20

## CONCLUSION

The Defendant, James O. Simpson, appeals from a conviction in the Circuit Court of Chambers County, Alabama. Simpson was convicted of the offense of leaving the scene of an accident involving death or injuries. §32-10-1, et seq., Code of Alabama, 1975. The case involving Simpson was tried on June 19, 2002 in abstentia. The issues presented for review include waiver of the right to appear at trial, refusal of a requested jury charge in mitigation of the offense and the trial court sentencing Simpson to the maximum of twenty years.

The evidence at trial concerning the absence of Simpson did not amount to an express or implied waiver of his constitutional right to be present at the trial of his case. The trial court had a duty to safeguard the rights of the defendant. The trial of Simpson should have been continued until he was properly before the court. The trial in abstentia prejudiced Simpson in that his constitutionally guaranteed right to be present was taken from him. The trial court erred and abused it's discretion by trying Simpson in abstentia.

Simpson requested the court to give a jury charge concerning the state of mind of the defendant and allowing a person fearing that he is in danger to leave the scene of an accident. The requested jury charge was improperly refused. The trial court erred by not giving the requested jury charge.

The petit jury found Simpson guilty of the offense of leaving the scene of an accident involving death or injuries.

This offense is a Class C felony. The punishment for a Class C felony is not less that a year and a day nor more than ten years.

At sentencing, the State presented a certified copy of a prior conviction of Simpson. Under the Habitual Offender Act, the minimum sentence was that of a Class B felony. Simpson could have received not less than two years nor more than a maximum of twenty years. There is no reasoning behind the decision of the trial court to sentence Simpson to twenty years. This sentence amounted to error and an abuse of the trial court's discretion.

Due to the errors committed and the abuse of discretion by the trial court, the matter of James O. Simpson should be remanded to the trial court for a new trial with instructions that the requested jury charge been given to the jury in mitigation of the offense. Further, if this matter is not remanded for new trial, it should be remanded to the trial court for a new sentencing hearing with instruction that the trial court reduce the sentence of Simpson.

22

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing documents has been served upon the following counsel of record, either by hand delivery or by placing same in the U.S. mail postage prepaid and properly addressed, this the _14_ day of _December_ , 2002.

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130

Honorable Bill Lisenby
Assistant District Attorney
Fifth Judicial Circuit
Chambers County Courthouse
LaFayette, Alabama 36862

Circuit Clerkof Chambers County
Chambers County Courthouse
LaFayette, Alabama 36862

Roland L. Sledge
Attorney for Appellant

23

SUMMARY OF RULINGS AND ACTIONS ADVERSE TO APPELLANT

| Record Page No. | Summary. |
|---|---|
| P. R. 3-6 | Denial of Defendant's Right to be Present. |
| P. R. 47 | Objection to Form of Question. |
| P. R. 67 | Objection to Question |
| P. R. 72 | Objection to Question. |
| P. R. 100-101 | Denial of Judgment of Acquital. |
| P. R. 109-111 | Denial of Jury Charge. |
| P. R. 133 | Denial of Probation Application. |
| P. C. 50 | Denial of Motion to Dismiss Restitution. |

24

CR-01-2408

In the *COURT* of *CRIMINAL APPEALS*

of *ALABAMA*

———————————◆———————————

JAMES O. SIMPSON, JR.,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

———————————◆———————————

*On Appeal From the Circuit Court of*
*Chambers County (CC-02-48)*

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

Michael B. Billingsley
*Assistant Attorney General*

Elizabeth Ray Butler *
*Assistant Attorney General*

State of Alabama
Office of the Attorney
General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7401, 242-7360 *

November 1, 2006    * Counsel of Record



## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is *not* requested.  Rule 34 of the Alabama Rules of Appellate Procedure allows for the request of oral argument in all cases.  According to Rule 34, oral argument is not proper if, among other situations,

> (3) The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

Oral argument is not appropriate in the instant case because the facts and legal arguments are clearly set forth in the State's brief and this Court will not be aided by oral presentation.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ......................... i

TABLE OF CONTENTS ........................................ ii

TABLE OF CASES AND AUTHORITIES .......................... iii

STATEMENT OF THE CASE .................................... 1

ISSUES PRESENTED FOR REVIEW ............................. 3

STATEMENT OF THE FACTS .................................. 3

STANDARD OF REVIEW ...................................... 6

SUMMARY OF THE ARGUMENT ................................. 7

ARGUMENT ................................................ 8

I.    The Trial Court Properly Held Simpson's Trial And
      Sentencing Hearing With Simpson *In Abstentia*. ........ 8

II.   The Trial Court Properly Refused Simpson's Requested
      Jury Charge ....................................... 19

III.  The Trial Court Properly Sentenced Simpson Within
      The Statutorily Prescribed Limits .................. 22

CONCLUSION ............................................. 24

CERTIFICATE OF SERVICE ................................. 25

## TABLE OF CASES AND AUTHORITIES

**Cases**

*Cassady v. State*, 828 So. 2d 960, 963 (Ala. Crim. App. 2002) ......................................... 11

*Commonwealth v. Johnson*, 734 A. 2d 864, 866 (Pa. Super. Ct. 1999) ..................................... 18

*Coon v. State,* 494 So. 2d 184, 186 (Ala. Crim. App. 1986) 21

*Crosby v. U.S.*, 113 S. Ct. 748, 751-753 (1993) ........... 15

*Crosby v. U.S.*, 113 S. Ct. 748, 753 (1993) .............. 15

*Isom v. State*, 69 So. 2d 716, 717 (Ala. Crim. App. 1954) ....................................... 19, 20

*J.W. v. State*, 751 So. 2d 529, 531 (Ala. Crim. App. 1999) 10

*Koons v. State*, 771 N.E. 2d 685, 690 (Ind. Ct. App. 2002) 17

*Meadows v. State*, 644 So. 2d 1342, 1345-1346 (Ala. Crim. App. 1994) ..................................... 15

*Rice v. State*, 766 So. 2d 143, 150 (Ala. Crim. App. 2000) 11

*Wallace v. State*, 408 So. 2d 171, 173 (Ala. Crim. App. 1981) ......................................... 22

*Winstead v. State*, 375 So. 2d 1207, 1208 (Ala. Crim. App. 1979) ......................................... 10

**Other Authorities**

Section 13A-5-6 of the Code of Alabama (1975) ........... 23

Section 32-10-1 of the Code of Alabama (1975) ........... 22

**Rules**

ARCrP

Rule 9.1 ........................... 8, 10, 11, 15, 16, 17

Rule 9.1(a), ....................................... 9

Rule 9.1(b) ........................................ 9

## STATEMENT OF THE CASE

On August 8, 2001, a warrant was issued for the arrest of James Olin Simpson, Jr. (Simpson) charging him with the failure to render aid and leaving the scene of an accident, in violation of Section 32-10-2 of the Code of Alabama (1975). (C. 1-2) Simpson was arrested on December 21, 2001. (C. 2) The Spring 2002 Term of the Chambers County Grand Jury issued an indictment charging Simpson with leaving the scene of an accident, in violation of Section 32-10-1 of the Code of Alabama (1975). (C. 15) This is an appeal of Simpson's conviction.

On January 15, 2002, the trial court appointed the Honorable Roland Sledge to represent Simpson. (C. 6-7) On January 23, 2002, Simpson filed a motion for a preliminary hearing, which the trial court subsequently scheduled for February 22, 2002. (C. 11-12)

On June 19, 2002, the trial court called Simpson's case for trial. (R. 3) Upon learning that Simpson was not present, the trial court issued a warrant for his arrest. (C. 38) The trial court also determined that Simpson voluntarily waived his right to be present and, therefore, continued with Simpson's trial *in abstentia*. (R. 4) On

the same day, the jury found Simpson guilty as charged in the indictment.  (C. 22-23, R. 124)

On July 31, 2002, the trial court held a sentencing hearing.  (R. 127)  The court noted that Simpson again failed to appear and determined that he had voluntarily absented himself from the proceeding.  (R. 127)  Upon receiving evidence that Simpson had one prior felony conviction, the trial court sentenced Simpson to twenty years' imprisonment in the state penitentiary.  (R. 133)  The trial court also ordered Simpson to pay all attorney fees, $50 to the Victim's Compensation Fund Award, and restitution (the amount to be determined at a later date). (R. 133)

## ISSUES PRESENTED FOR REVIEW

1.   Did the trial court properly hold Simpson's trial and sentencing hearing with Simpson *in abstentia*?

2.   Did the trial court properly refuse to give Simpson's requested jury charge?

3.   Did the trial court properly sentence Simpson within the statutorily prescribed limits?

## STATEMENT OF THE FACTS

On August 1, 2001, around 7:00 p.m., Dane and Jerry Cash were driving their Harley Davidson motorcycles home from Lanett, Alabama on Cusetta Road.  (R. 34, 49)  Dana was riding her motorcycle approximately forty feet in front of her husband.  (R. 34)  At a stoplight, Jerry noticed that a black car, which was later determined to be Simpson's, pulled up directly behind him, backed off, and then repeated the movement about five times.  (R. 49, 58)

A few minutes after turning at the stoplight, the same car struck the back of Jerry's motorcycle.  (R. 51)  Dana looked behind her to see her husband on the grill of Simpson's car.  (R. 35)  Jerry fell to the ground, but remained trapped, face down under the front tire of the car.  (R. 35, 51)  Dana testified that, instead of hitting

3

the brakes, Simpson accelerated, pulling Jerry along with him for about 150 feet. (R. 35) Jerry's body eventually flipped over so that he was on his back with Simpson's back tire on his chest. (R. 35, 51) At that point, Simpson revved his engine and drove away. (R. 35)

After Simpson drove away, Dana, who had pulled her motorcycle to the side of the road, rushed to Jerry's aid. (R. 36) She yelled for the people in the car behind them to call 911. (R. 38) When the ambulance arrived, it transported Jerry to Lanier Memorial Hospital. (R. 52, 69)

At Lanier Memorial, Jerry was treated by Dr. Eric Hemburg. (R. 70) Dr. Hemburg testified that Jerry's entire upper body was covered in extensive abrasions. (R. 70) He also treated Jerry for a dislocated shoulder, a "blowout fracture" of the facial bones, and a fracture of the right side of his face. (R. 70) Jerry was hospitalized for three days. (R. 52, 69) He testified that he still lacks sensation over the majority of his face. (R. 53)

Jamie Reeves and his wife Marie testified that they purchased a black, 1989 Beretta from Simpson on August 3, 2001. (R. 78, 80, 83) They stated that they had purchased

4

another car from Simpson in the past and had known Simpson
and his wife for about three years.  (R. 83-84)  Jamie
Reeves noticed that the Beretta had some damage on the
front, but Simpson explained that he had driven it into a
ditch.  (R. 79)  Shortly after purchasing the vehicle, the
Reeves learned that there were problems with the car's VIN
number, so they sold it.  (R. 77)

On August 6, 2001, Officer Richard Carter of the Lanett
Police Department located the Beretta.  (R. 87-88)  On the
same day, Officer Carter contacted Simpson who was in
Opelika.  (R. 88)  Officer Carter explained to Simpson that
he was investigating a hit and run accident and then read
Simpson his *Miranda* rights.  (R. 90-91)  After Simpson
voluntarily signed the rights waiver form, he provided a
statement to Officer Carter.  (R. 91-95)

Simpson told Officer Carter that he hit Jerry Cash
accidentally, because he did not see Jerry's brake light on
his motorcycle.  (C. 42, R. 95)  Simpson explained that he
heard something being dragged under his car but believed
that it was only Jerry's motorcycle.  (C. 42, R. 95)
Simpson further stated that he was too afraid to stop his
car because Dana Cash was yelling at him and calling him a

5

"bastard." (C. 42, R. 95)  Following the accident, Simpson

said that he hid the Beretta in a dove field before selling

it to the Reeves.  (C. 42, R. 95)

## STANDARD OF REVIEW

**Issue 1:**  The issue of whether the trial court properly

interpreted a procedural rule presents a question of law.

It is, therefore, subject to de novo review.  *See Ex parte*

*Hill*, 690 So. 2d 1201, 1203 (Ala. 1996).

**Issue 2:** The standard of review regarding a trial

court's instructions to the jury is abuse of discretion. A

trial court has broad discretion when formulating its jury

instructions.  *Williams v. State*, 611 So. 2d 1119, 1123

(Ala. Crim. App. 1992).  When reviewing a trial court's

instructions, "the court's charge must be taken as a whole,

and the portions challenged are not to be isolated

therefrom or taken out of context, but rather considered

together." *Self v. State*, 620 So. 2d 110, 113 (Ala. Crim.

**Issue 3:** An appellate court does not have jurisdiction

to review a sentence imposed by a trial court if it is

within the statutorily prescribed limits.  *Evans v. State*,

794 So. 2d 415, 439 (Ala. Crim. App. 2000); *Wallace v.*

*State*, 408 So. 2d 171, 173 (Ala. Crim. App. 1981).  The

6

appellate court will not overturn a sentence imposed by the
trial court absent a clear abuse of discretion. *Hodges v.*
*State*, 500 So. 2d 1273, 1278 (Ala. Crim. App. 1986).

### SUMMARY OF THE ARGUMENT

Simpson asserts that the trial court abused its
discretion by trying him, accepting his conviction, and
sentencing him *in abstentia*. More specifically, Simpson
contends that he did not waive his right to be present at
trial. Because the record shows that Simpson voluntarily
absented himself from trial, the trial court's
determination to proceed with Simpson *in abstentia* pursuant
to Rule 9.1 of the Alabama Rules of Criminal Procedure was
proper.

Simpson alleges that the trial court improperly refused
his requested jury charge in mitigation of the charge
against him. Specifically, he asserts that the trial court
should have informed the jury that they "could consider the
fact that Simpson could leave the scene of the accident if
he thought he was in danger." Because Simpson presented no
evidence to support this defense to leaving the scene of

7

the accident, the trial court properly denied this requested jury charge.

Next, Simpson contends that the sentence imposed upon him was excessive. The trial court properly sentenced Simpson as an habitual offender within the statutory guidelines of Section 13A-5-6 of the 1975 Code of Alabama; therefore, his sentence was not excessive.

### ARGUMENT

**I.    The Trial Court Properly Held Simpson's Trial And Sentencing Hearing With Simpson *In Abstentia*.**

Simpson asserts that the trial court abused its discretion by trying him, accepting his conviction, and sentencing him *in abstentia*. More specifically, Simpson contends that he did not waive his right to be present at trial. Because the record shows that Simpson voluntarily absented himself from trial, the trial court's determination to proceed with Simpson *in abstentia* pursuant to Rule 9.1 of the Alabama Rules of Criminal Procedure was proper.

At arraignment, the trial court informed Simpson of his trial date. (R. 4) Simpson's attorney contacted him and explained that, due to budgetary problems, his trial date

8

was reset.  (R.3-4)  Mr. Sledge then stated that he would
contact Mr. Simpson with the new trial date.  (R. 3-4)
Prior to trial, Mr. Sledge wrote several letters to Mr.
Simpson's address, left several messages on his answering
machine telling Simpson what his new trial date was, and
contacted members of Simpson's family.  (R. 3-4, 127)  Mr.
Sledge, however, was unable to locate Simpson.  (R. 3-4,
127)  The trial court, therefore, properly determined that
Simpson's absence was a voluntary waiver of his right to be
present at trial.

Rule 9.1(a), ARCrP, provides that a defendant has the
right to be present at every stage of the trial.  This
right, however, is waivable according to Rule 9.1(b), which
states:

> (b)  WAIVER OF THE RIGHT TO BE PRESENT
> (1)      Except    as    provided    in
> subsection   (2),   a   defendant   may
> waive the right to be present at any
> proceeding in the following manner:
>
>> (i)   With the consent of the
>> court, by an understanding and
>> voluntary waiver in open court
>> or by a written consent executed
>> by  the  defendant  and  by  the
>> defendants' attorney of record,
>> filed in this case.
>>
>> (ii)  By the defendant's absence
>> from  **any proceeding**, upon the

9

court's finding that such **absence was voluntary and constitutes an understanding and voluntary waiver of the right to be present,** and that **the defendant had notice of the time and place** of the proceeding and was informed of the right to be present.

(2)  **A defendant may not waive the right to be present if:**

(i)  **The defendant is not represented by counsel** at the proceeding which the defendant is not present, except in minor misdemeanor cases or proceedings conducted after the defendant has been adjudicated guilty; or

(ii)  **The defendant has been convicted of an offense that may be punishable by death** and sentence is being imposed.

Rule 9.1 provides for the right to be present at any stage of trial and sentencing, but then indicates that the right is waivable in certain circumstances.

This Court has held that, when interpreting a rule of procedure, such as Rule 9.1, the court must give the wording and language of the rule its plain meaning. *J.W. v. State*, 751 So. 2d 529, 531 (Ala. Crim. App. 1999); *Winstead v. State*, 375 So. 2d 1207, 1208 (Ala. Crim. App. 1979); *Cassady v. State*, 828 So. 2d 960, 963 (Ala. Crim.

10

App. 2002). "Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive." *Rice v. State*, 766 So. 2d 143, 150 (Ala. Crim. App. 2000). Additionally, when a conflict arises between a statement found in the committee comments to a rule and the plain language of a rule, the plain language takes precedence. *J.W.*, 751 So. 2d at 532.

The plain language of Rule 9.1 allows for the waiver of the right to be present at trial or sentencing except in two specific situations, neither of which applies to Simpson's case. Although the committee comments to Rule 9.1 seem to indicate that a waiver of the right to be present at trial may not be inferred from a failure to initially appear, the plain language of Rule 9.1 is controlling.

Because Simpson did not fall within the two exceptions to permissible waiver, the only issues remaining for the trial court was to determine were whether Simpson was voluntarily absent and voluntarily waiving his right to be present at trial. At the commencement of Simpson's trial, the following discussion took place:

> MR. SLEDGE: Judge, my client is not here as the Court is well aware. He has a

11

constitutional right to be present at the trial of his case to hear the evidence presented against him. The Court arraigned Mr. Simpson several weeks ago and explained to him his constitutional rights. The Court also explained that if he got out of jail he should stay in contact with me.

Mr. Simpson was in jail until approximately three weeks ago. I found that out by going to the jail, and he was not there. He has not contacted me. I have sent him a letter, <u>two letters in fact, Judge, to show that his was his week to go to trial.</u> I have <u>left four messages at the telephone number that is on his bond</u> for him to call me or contact me and be here this morning. He is not here.

THE COURT: At arraignment when counsel is appointed, it's my practice and procedure to explain to each defendant that the lawyer appointed in their [case], that what they say to them is between the two of them, and that the worst thing that they could do is lie to their lawyer.

I also tell them that another terrible thing that they can do is to disappear on the lawyer. So give the lawyer a good address and hopefully a good phone number where they can be reached.

If the defendant is in jail I specifically instruct the defendant that if they get out of jail on bond, then the first thing they need to do is contact the lawyer to let them know where they're going to be.

12

Now, I am further informed that this morning the defendant's bondsman has been contacted. <u>I take the position that Mr. Simpson has decided that the best defense is a good offense and that he has chosen not to appear.</u>

**<u>So I will take the position that he has waived his right to be present in this case.</u>** We're going to go ahead and proceed. There was no indication by any of his family members or from him that something has come up where he's in the hospital or out of state or out of the country receiving the Nobel Prize for whatever reason.

MR. SLEDGE: <u>I have not heard from any of his family members.</u>

THE COURT: So we're going to go ahead.

* * *

MR. LISENBY: One more thing for the record. <u>It's my recollection at arraignment that the Court notified all persons at that time of the trial dates even though there was a change in the trial schedule due to the money situation that came up. Notices were sent out to all persons to be present on June the 17th.</u>

MR. SLEDGE: That's very true, Judge. And When the regular scheduled trial term was canceled by the Administrative Office of Courts and by the Supreme Court <u>I notified Mr. Simpson in writing at the jail at that time that that trial term had been canceled and that I would inform him of any new trial date. I did that.</u>

13

(R. 4-6)

Furthermore, following Simpson's conviction, the trial court continued his sentencing for another date and issued a warrant for his arrest in an attempt to ensure his presence. At the sentencing hearing, once again, the trial court addressed Simpson's failure to appear.

> THE COURT: When this case was called for trial Mr. Simpson did not appear. <u>Mr. Sledge had testified as to the substantial efforts he had made in trying to get in touch with Mr. Simpson, contacted his family members, called houses, left messages, no response.</u>
>
> MR. SLEDGE: That's true.
>
> THE COURT: The case went to trial without Mr. Simpson's presence. I made a finding that he had voluntarily absented himself from court and the case was tried to verdict.
>
> Now, since that time, Mr. Sledge, what efforts have you made to locate Mr. Simpson?
>
> MR. SLEDGE: Judge, <u>I have written two letters to the last address Mr. Simpson presented to me.</u> Also looked in the file and <u>got the address off his bond form. Sent a letter - - I know at least one letter to that address.</u> Neither Mr. Simpson nor his wife ha[ve] contacted my office. I heard through the grapevine that Mr. Simpson may be incarcerated in Troup County. But I have not confirmed that.
>
>          * * *

14

THE COURT:  <u>But I am of the firm opinion</u>
<u>that his position is that the best</u>
<u>defense is a good offense.</u>  And he had
hit the road.  It's entirely possible he
may be in jail someplace else.  We can't
confirm that anywhere.  And apparently
his bondsmen have not been able to locate
him.

MR. SLEDGE:  Not to my knowledge.

THE COURT:  So I'm prepared to go forward
with sentencing and to determine
restitution in this case.

(R. 127-128)  The trial court properly determined that

Simpson knew about his trial date, was intentionally

avoiding his appointed attorney, and, therefore,

voluntarily waived his right to be present at trial.

   Simpson relies on *Meadows v. State*, 644 So. 2d 1342,

1345-1346 (Ala. Crim. App. 1994), wherein this Court held

that a defendant who is not initially present at the

commencement of trial may not waive his right to be

present.  *Meadows*, however, was based on the Supreme

Court's interpretation of federal rules of procedure in

*Crosby v. U.S.*, 113 S. Ct. 748, 753 (1993), and not on the

plain language of Rule 9.1, ARCrP. *Crosby v. U.S.*, 113 S.

Ct. 748, 751-753 (1993).  In *Crosby*, the Supreme Court

looked to the plain language of Rule 43 of the ***Federal***

15

Rules of Criminal Procedure which provides that "a defendant who was *initially* present at trial . . . waives the right to be present . . . when the defendant is voluntarily absent *after the trial has begun.*"  *Id.* at 751 Additionally, because the Supreme Court declined to review the constitutionality of this issue, it left each State to address the commencement of trial *in abstentia* according to the language found in each state's procedural rules.  *Id.* at 753.

In *Meadows*, this Court relied on the committee comments to Rule 9.1 and on Justice Maddox's treatise on the Alabama Rules of Criminal Procedure to conclude that Rule 9.1 "states that the trial must have 'commenced' before a defendant may waive his right to be present."  644 So. 2d at 1345.  Both the committee comments to Rule 9.1 and Justice Maddox's treatise reflect the *draft* of Rule 9.1 and not the version adopted by the Legislature on May 31, 1990. The *draft* of Rule 9.1 provides that "if after the trial had *commenced* the defendant is absent . . . the court may infer that the absence is voluntary" and a "waiver of the right to be present."  Alabama Rules of Criminal Procedure, Advisory Committee Draft, Alabama Law Institute, published

16

June 1, 1977, pg. 101. (See Appendix A). Before Rule 9.1 was adopted in 1990, the requirement that the trial must have "commenced" before the trial court can deem that a defendant's absence is a waiver of his right to be present was removed; however, the committee comments to Rule 9.1 did not change to reflect the language of the adopted version of the rule. Therefore, this Court's reliance on the committee comments and Justice Maddox's treatise instead of the plain language of Rule 9.1 was misguided.

Several states have used their own state procedural rules to evaluate whether a defendant's absence at the commencement of trial equates to a voluntary waiver of his right to be present. In *Koons v. State*, 771 N.E. 2d 685, 690 (Ind. Ct. App. 2002), the Indiana court addressed Koons's assertion that, in the light of *Crosby*, the Indiana rules permitting a trial *in abstentia* should be reconsidered. The court noted that, because the United States Supreme Court declined to address the constitutionality of holding a trial *in abstentia,* the Indiana procedural rules applied. *Koons v. State*, 771 N.E. 2d 685, 690 (Ind. Ct. App. 2002). The court held that, unlike the federal rules, Indiana procedural rules

17

permitted a defendant's absence at the commencement of trial to waive his right to be present during trial and sentencing. *Id.*

In *Commonwealth v. Johnson*, 734 A. 2d 864, 866 (Pa. Super. Ct. 1999), the Pennsylvania Superior Court addressed Johnson's contention that his absence before trial could not be a waiver of his right to be present. The court held that, based on Pennsylvania Rules of Criminal Procedure, when a defendant is absent without cause at the time scheduled for trial, he may be tried *in abstentia*. *Commonwealth v. Johnson*, 734 A. 2d 864, 866 (Pa. Super. Ct. 1999). The court further noted that "a contrary rule . . . would be a travesty of justice." *Id.*

Furthermore, allowing a defendant to indefinitely postpone a trial by simply refusing to show up seriously undermines the ability of our criminal justice system to function as intended by our Legislature. If a defendant knows that he or she can avoid a guilty verdict or sentence by "dodging" appointed counsel and remaining absent from the commencement of trial, many would do so resulting in an immobilization of our criminal courts. Simpson initially attempted to evade taking responsibility for hitting Jerry

18

Cash with his automobile by failing to stop at the scene and then hiding his car in a dove field. By refusing to maintain contact with his attorney and failing to appear at trial, Simpson is essentially attempting, once again, to escape responsibility for his actions. Accordingly, this Court should affirm Simpson's conviction.

## II. The Trial Court Properly Refused Simpson's Requested Jury Charge.

Simpson alleges that the trial court improperly refused his requested jury charge in mitigation of the charge against him. Specifically, he asserts that the trial court should have informed the jury that they "could consider the fact that Simpson could leave the scene of the accident if he thought he was in danger." Because Simpson presented no evidence to support this defense to leaving the scene of the accident, the trial court properly denied this requested jury charge.

In support of his assertion, Simpson relies on *Isom v. State*, 69 So. 2d 716, 717 (Ala. Crim. App. 1954). In *Isom*, this Court addressed the very issue raised by Simpson and relied on 61 C.J.S., Motor Vehicles, Section 676, which provides the following:

19

> The alleged fear of accused that he might
> have been assaulted if he had stopped to
> comply with the statute [requiring him to
> stay at the scene of an accident] does
> _not_ excuse his failure to comply, *where
> there was not any attempt or threat to
> assault him or the display of any weapon*
> with which an assault might have been
> committed.

*Isom v. State*, 69 So. 2d 716, 717 (Ala. Crim. App.

1954)(emphasis added). At trial, Isom testified that the

other driver returned to his vehicle, threatening Isom by

saying that he was going to kill him. *Id.* This Court held

that there was sufficient evidence to show that Isom was

confronted with "danger to his life or great bodily harm."

Accordingly, it would have been both unjust and

unreasonable to expect Isom to remain on the scene.

There was no evidence that Simpson was confronted with

danger to his life or great bodily harm. Simpson merely

told Officer Carter that Dana Cash was yelling at him,

calling him a "bastard." (C. 42) There was no evidence

that Dana threatened Simpson either verbally or with a

weapon. Because a defendant is entitled to an instruction

on his defense theory only if the "theory has foundation in

the evidence and legal support", the trial court properly

20

refused Simpson's requested instruction.  *See Coon v. State,* 494 So. 2d 184, 186 (Ala. Crim. App. 1986).

### III. The Trial Court Properly Sentenced Simpson Within The Statutorily Prescribed Limits.

Next, Simpson contends that the sentence imposed upon him was excessive. The trial court properly sentenced Simpson as an habitual offender within the statutory guidelines of Section 13A-5-6 of the 1975 Code of Alabama; therefore, his sentence was not excessive.

In *Wallace v. State,* 408 So. 2d 171, 173 (Ala. Crim. App. 1981), this Court held that Wallace's complaints regarding the excessiveness of his sentence to ninety-nine years' imprisonment were without merit due to his conviction of rape in the first degree, a Class A felony. This Court further noted that, because the sentence was within the statutory guidelines, it had no jurisdiction to review the sentence. *Wallace v. State*, 408 So. 2d 171, 173 (Ala. Crim. App. 1981).

Simpson was convicted for violation Section 32-10-1 of the Code of Alabama (1975), a Class C felony. At the sentencing hearing, the State produced evidence of a prior conviction by Simpson, elevating Simpson's conviction to a Class B felony under the Habitual Felony Offender Act. (R. 128) Based on Section 13A-5-6 of the Code of Alabama

22

(1975), Simpson was eligible for a minimum sentence of two years to a maximum sentence of twenty years.

At the sentencing hearing, the trial court stated the following:

> Mr. Cash was hurt very bad.  This was not a situation where Mr. Simpson just sort of brushed Mr. Cash and may or may not have known that there was a serious accident and left the scene.
>
> As a matter of fact, testimony was that Mr. Simpson was actually parked on top of Mr. Cash at one point.  And Mr. Cash is fortunate that he is a very large man.  A smaller man probably could not have withstood that pressure.  Mr. Simpson showed no interest in that accident when he left.  He show[ed] no interest in this case since he's not appeared for court. The fact[s] are egregious.

(R. 133)  Sentencing Simpson to twenty years' imprisonment not only fell within the statutory range but, due to the severity of the crime, was not an abuse of discretion by the trial court.  Accordingly, Simpson's sentence is due to affirmed by this Court.

23

**CONCLUSION**

The conviction below is due to be affirmed on appeal.

Respectfully submitted,

William H. Pryor Jr.
ATTORNEY GENERAL
BY-

_____

ELIZABETH RAY BUTLER
ASSISTANT ATTORNEY GENERAL
BUT03

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th of January, 2003, I served a copy of the foregoing on the Honorable Roland Sledge, attorney for Simpson, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

> Roland L. Sledge
> 4002 20th Avenue, Suite B
> Valley, Alabama 36854

ELIZABETH RAY BUTLER*
ASSISTANT ATTORNEY GENERAL
BUT031

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300 / 242-7360*

#87370

44536

Butler

RELEASED

AUG 29 2003

CLERK
ALA COURT CRIMINAL APPEALS

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of <u>Southern Reporter</u>. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 242-4621), of any typographical or other errors, in order that corrections may be made before the opinion is printed in <u>Southern Reporter</u>.

# ALABAMA COURT OF CRIMINAL APPEALS

## OCTOBER TERM, 2002-2003

---

### CR-01-2408

---

James Olen Simpson Jr.

v.

State

Appeal from Chambers Circuit Court
(CC-02-48)



McMILLAN, Presiding Judge.

The appellant, James Olen Simpson, Jr., was found guilty of leaving the scene of an accident involving injuries or death without providing the information or assistance required under § 32-10-1, Ala. Code 1975. The trial court sentenced

CR-01-2408

him to 20 years' imprisonment and ordered the sentence to run concurrently with any other sentence that he was serving. The court also ordered him to repay $15,000 that had been paid to the victim by the crime victims compensation fund.

Simpson was indicted on January 30, 2002, and arraigned on March 11, 2002. Because of State budgetary problems, his case was not called for trial until June 19, 2002. Simpson failed to appear on that date, and the trial court found that he had voluntarily waived his right to be present. The State then offered evidence indicating the following: At approximately 7:00 p.m. on August 1, 2001, Jerry Cash and his wife Dana were riding their motorcycles near Lanett. Four or five times, a black automobile drove up behind them and then "back[ed] off." Shortly after Jerry Cash crossed some railroad tracks, the black automobile struck his motorcycle from behind. Dana Cash saw her husband fall onto the ground from the grille of the black automobile. The car accelerated and dragged Cash approximately 150 feet before it stopped; when it stopped its back tire was on Cash's chest. The driver then revved the engine and drove away without rendering any assistance or providing a name, address, vehicle registration,

2

CR-01-2408

or driver's license.  Neither Dana Cash nor Jerry Cash saw the driver of the automobile.  Jerry Cash suffered numerous injuries, including deep abrasions, a broken nose, crushed eye sockets, and a dislocated shoulder.  Two days after the accident, Jamie Reeves and his wife purchased a black 1989 Chevrolet Beretta automobile from Simpson.  He told them that damage on the front of the vehicle had occurred when he drove into a ditch.  On August 6, police lieutenant Richard Carter located the Beretta and contacted Simpson.  After waiving his Miranda rights, Simpson told Carter that he had hit Jerry Cash accidentally because he did not see Cash's brake light.  He said that he heard something being dragged under his car but he thought that it was the victim's motorcycle.  Simpson said that he hid the Beretta in a field until he sold it to the Reeveses.

I.

Simpson's first contention is that the trial court abused its discretion by trying him in absentia.  He argues that he had the right to be present at the trial of his case and that he did not affirmatively waive this right.  He further argues that the court erred in finding an implied waiver based upon

3

CR-01-2408

his failure to appear because, he says, there was no evidence
indicating that his absence was voluntary.    Simpson argues
that Rule 9.1(b)(1)(ii), Ala. R. Crim. P., allows an implied
waiver only when a defendant is present at the beginning of
trial and then fails to appear at a later date.

The record reflects that the judge called the Simpson's
case for trial on June 19, 2002.  He asked if the defense was
ready to proceed, and defense counsel responded, "No, sir,
Your Honor."  The following discussion then ensued:

> "[DEFENSE COUNSEL]: Judge, my client is not here as
> the Court is well aware.  He has a constitutional
> right to be present at the trial of his case to hear
> the evidence presented against him.  The court
> arraigned Mr. Simpson several weeks ago and explained
> to him his constitutional rights.  The Court also
> explained that if he got out of jail he should stay
> in contact with me.
>
> "Mr. Simpson was in jail until approximately three
> weeks ago.  I found that out by going to the jail,
> and he was not there.  He has not contacted me.  I
> have sent him a letter, two letters in fact, Judge,
> to show that this was his week to go to trial.  I have
> left four messages at the telephone number that is on
> his bond for him to call me or contact me and be here
> this morning.  He is not here.
>
> "THE COURT:   At arraignment when counsel is
> appointed, it's my practice and procedure to explain
> to each defendant ... that what they say to the
> lawyer and what the lawyer says to them is between
> the two of them, and that the worst thing that they
> could do is lie to their lawyer.

4

CR-01-2408

"I also tell then that another terrible thing that they can do is to disappear on the lawyer. So give the lawyer a good address and hopefully a good telephone number where they can be reached.

"If the defendant is in jail I specifically instruct the defendant that if they get out of jail on bond, then the first thing they need to do is contact the lawyer to let them know where they're going to be.

"Now, I am further informed this morning this defendant's bondsman has been contacted. I take the position that Mr. Simpson has decided that the best defense is a good offense and that he has chosen not to appear.

"So I will take the position that he has waived his right to be present in this case. We're going to go ahead and proceed. There was no indication by any of his family members or from him that something has come up where he's in the hospital or out of state or out of the country receiving the Nobel Prize for whatever reason.

"[DEFENSE COUNSEL]: I have not heard from any of his family members.

" . . . .

"[PROSECUTOR]: One more thing for the record. It's my recollection at arraignment that the Court notified all persons at that time of the trial dates even though there was a change in the trial schedule due to the money situation that came up. Notices were sent to all persons to be present on June 17.

"[DEFENSE COUNSEL]: That's very true, Judge. And when the regular scheduled trial term was canceled by the Administrative Office of Courts and by the Supreme Court I notified Mr. Simpson in writing at the jail at that time that that trial term had been

5

CR-01-2408

canceled and that I would inform him of any new trial date.  I did that."

The court proceeded with the voir dire of the jury.  At the end of the questioning, the judge called the attorneys to the bench, and the following occurred:

> "[CLERK]:    Tab  Smith  [Simpson's  bondsman]  just called.  He has talked to Mr. Simpson.  He said that he talked to [defense counsel] a couple of weeks ago. I told him it was always up to the attorneys to notify of the trial dates.  But he has talked to Mr. Simpson.  He's supposed to be calling him back.

> "THE COURT:  Mr. Simpson needs to be on the road."

The court asked defense counsel when he wanted the jury to return, and counsel said "[a]bout 30 minutes."  When the jury returned, Simpson still was not present.   The court then proceeded with the trial.

Whether a defendant who is absent at the commencement of trial can be tried in absentia when there is affirmative evidence that he knew of and voluntarily waived his right to be present by failing to appear is a matter of first impression before this court.  Rule 9.1(a), Ala. R. Crim. P., provides that a defendant has "the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions

CR-01-2408

pursuant to Rule 21, the return of the verdict, and sentencing." Section (b) of Rule 9.1 provides, in pertinent part:

> "[A] defendant may waive the right to be present at any proceeding in the following manner:
>
> "(i) With the consent of the court, by an understanding and voluntary waiver in open court or by a written consent, executed by the defendant and by the defendant's attorney of record, filed in the case.
>
> "(ii) By the defendant's absence from any proceeding, upon the court's finding that such absence was voluntary and constitutes an understanding and voluntary waiver of the right to be present, and that the defendant had notice of the time and place of the proceeding and was informed of the right to be present."

The Committee Comments to Rule 9.1(b) state:

> "Section (b) allows a defendant to waive the right to be present. The defendant may make an express waiver in open court or may waive the right by voluntary absence from the proceeding. See Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). ...
>
> "Waiver of the right to be present must be clear and unequivocal. Waiver must be affirmative and positive in nature and made by the defendant personally. Consent or acquiescence of a defendant to a waiver of the right cannot be presumed but must affirmatively appear from the record. Berness v. State, 263 Ala. 641, 83 So. 2d 613 (1955). Thus, section (b) allows the court to find an implied waiver only when the defendant has been present at the commencement of the trial and fails to appear at

CR-01-2408

> some later stage of the trial.  <u>Such a waiver may not</u>
> <u>be inferred if the defendant has never appeared at</u>
> <u>trial</u>, except in the case of a minor misdemeanor,
> which  by  definition  carries  no  threat  of
> imprisonment."

[(Emphasis added.)]

In <u>Meadows v. State</u>,  644 So. 2d 1342 (Ala. Crim. App.

1994), this court considered whether a defendant charged with

a felony could be tried <u>in absentia</u> if he was not present at

the beginning of trial.  We held that, in the absence of

affirmative  evidence  indicating  that  a  defendant  has

voluntarily waived his right to be present, a defendant

charged with a felony cannot be tried <u>in absentia</u> if he is not

present at the beginning of his trial.  In reaching this

decision, we relied on the Committee Comments to Rule 9.1(b),

quoted above, and on H. Maddox, <u>Alabama Rules of Criminal</u>

<u>Procedure</u> (1990), in which former Justice Hugh Maddox

concludes that a court cannot infer a waiver of the right to

be  present  unless  the  defendant  was  present  at  the

commencement of the trial. We also relied on <u>Crosby v. United</u>

<u>States</u>, 506 U.S. 255 (1993), in which the United States

Supreme Court held that the Federal Rules of Criminal

Procedure do not permit the trial of a defendant who is not

CR-01-2408

present at the beginning of trial.  However, the <u>Crosby</u> Court declined to review Crosby's claim that his trial <u>in absentia</u> was unconstitutional.  Therefore, the states may consider this issue in light of their own statutes and procedural rules.

The Committee Comments to Rule 9.1 and Justice Maddox's treatise were based on a draft of Rule 9.1 which, like Rule 43, Fed. R. Crim. P., provided that the court may infer waiver of the right to be present if a defendant is absent after his trial has "commenced."  However, Rule 9.1 adopted by the Alabama Supreme Court on May 31, 1990[1], does not include the "commenced" language.  Rule 9.1(b)(ii), Ala. R. Crim. P., currently provides that the court may find that a defendant's absence was voluntary and that it constituted an understanding and voluntary waiver of his right to be present if the defendant had notice of the time and place of the proceeding and if the defendant was informed of his right to be present. When there is a conflict between a statement found in the committee comments and the plain language of a rule, the rule takes precedence.  <u>Ex parte Anderson</u>, 644 So. 2d 961 (Ala. 1994)(interpreting Rule 27, Ala. R. Civ. P.).

---

[1]The Alabama Rules of Criminal Procedure were adopted May 31, 1990, to be effective January 1, 1991.

9

CR-01-2408

A number of other states have interpreted their rules and statutes so as to make no distinction between a defendant's absence at the beginning of trial and his absence at some point during the trial. See, e.g., <u>Walker v. State</u>, 338 Md. 253, 658 A.2d 239 (1995)(Maryland rule permits trial court to find waiver of right to be present whenever defendant agrees to or acquiesces in being absent); <u>Commonwealth v. Sullens</u>, 533 Pa. 99, 619 A.2d 1349 (1992)(defendant who is absent without cause at time his trial is scheduled may be tried <u>in absentia</u>); <u>Koons v. State</u>, 771 N.E. 2d 685 (Ind. Ct. App. 2002)(Indiana rules permit defendant who is absent at commencement of trial to waive right to be present); and <u>State v. Finklea</u>, 147 N.J. 211, 686 A.2d 322 (1996)(once defendant has been given actual notice of trial date, non-appearance on trial date is deemed waiver of right to be present absent showing of justification).

In the present case, the trial court sent Simpson a notice to appear for trial on May 17. Defense counsel gave Simpson written notice that the trial date had been changed to June 19. Simpson's bondsman talked to him about the trial date on the day trial began. Simpson failed to call his bondsman

CR-01-2408

back.  The trial court had affirmative evidence that Simpson knew about his trial date and his right to be present at trial but decided not to appear.  Compare Meadows v. State, supra (in which the defendant knew that his case was in "ready" status, but his counsel had been unable to contact him after the trial date was set).  The trial court did not err in finding that Simpson had voluntarily waived his right to be present by failing to appear.

We note that Simpson also failed to appear for sentencing even though the court continued the sentencing hearing until July 31, 2002.  Defense counsel told the court that he had written letters to the addresses Simpson had given him and the bondsman, but he had not been contacted by Simpson or his wife.  The trial court stated: "I am of the firm opinion that [Simpson's] position is that the best defense is a good offense.  And he has hit the road.  We can't confirm that anywhere.  Apparently his bondsmen have not been able to locate him."  The court then proceeded to sentence the appellant in absentia.  Although being tried in absentia is certainly no means a favored practice, neither can a defendant's intentional avoidance of trial be condoned.  Under

11

CR-01-2408

these facts, the fact that Simpson was notified and was aware of his trial date is clear, as is his disregard for the judicial system.

Simpson has not included any specific argument regarding his absence at sentencing in his appellate brief. In criminal cases in which the death penalty has not been imposed, this court is not obligated to consider issues not presented in briefs on appeal. Rule 45B, Ala. R. App. P. However, we note that, pursuant to Rule 24.1, Ala. R. Crim. P., Simpson had 30 days after his sentence was pronounced to file a motion for a new trial and to offer a reason that he failed to appear. No such motion appears in the record on appeal.

II.

Simpson's second contention is that the trial court erred in refusing to charge the jury that he had the right to leave the scene of an accident if he believed he was in danger. He argues that he was entitled to the charge because he told Lieutenant Carter that he was scared because the female victim was screaming and calling him a "bastard." He also argues that the victim was a large person who weighed approximately 460 pounds on the date of the accident.

CR-01-2408

"'The alleged fear of [the] accused that he might have
been assaulted if he had stopped to comply with [§ 32-10-1]
does not excuse his failure to comply, where there was not any
attempt or threat to assault him or the display of any weapon
with which an assault might have been committed.'" Isom v.
State, 37 Ala. App. 416, 417, 69 So. 2d 716, 717
(1954)(quoting 61 C.J.S. Motor Vehicles § 676). In Isom, the
court found that an instruction similar to the instruction
requested by Simpson was warranted because one of the victims
approached Isom's vehicle and stated, "I will kill you." Id.
Here, the victim testified that he did not move from the
ground until the ambulance arrived, and his wife stated that
she stayed with the victim. There was no evidence that either
of them approached Simpson or threatened him in any way.

A requested jury instruction is properly refused if it is
inapplicable to the facts of the case. Bogan v. State, 529
So. 2d 1029 (Ala. Crim. App. 1988). Here, the judge explained
that he was refusing the requested instruction because there
was no evidence indicating that Simpson was in danger:

"I don't think it is reasonable to infer from his
statement that he was scared of what might happen to
him. I think he was just scared. It would scare me
to do that. I don't think that it is a defense to

13

CR-01-2408

> this particular charge ...unless there's some
> indication that ... [the victim] ... pulled a pistol
> and ... [began] making threats and that sort of
> thing."

The court's refusal to give the requested charge was proper

because there was no evidence indicating that the appellant

had been "confronted with danger to [his] life or great bodily

harm." Isom v. State, 37 Ala. at 418, 69 So. 2d at 718.

### III.

Simpson's third contention is that the trial court abused

its discretion by sentencing him to the maximum sentence of 20

years' imprisonment.  He argues that, although his actions

were wrong, they did not give rise to a sentence of 20 years.

He argues that the court criticized him for failing to appear

for trial or sentencing but did not mention that the victim

also failed to appear at the sentencing hearing.

When a defendant's sentence is within statutory limits,

this court has no jurisdiction to review the sentence imposed

by the trial court. Wallace v. State, 408 So. 2d 171 (Ala.

Crim. App. 1981).  Simpson was found guilty of a Class C

felony, and the State offered evidence showing that he had one

prior felony conviction.  Therefore, the circuit court was

required to punish him for a Class B felony offense. § 13A-5-

14

CR-01-2408

9(a)(1), Ala. Code 1975.    The court imposed a 20-year sentence, which was within the 2-year to 20-year range prescribed for a Class B felony.    § 13A-5-8, Ala. Code 1975. Therefore, this court cannot review the sentence on appeal.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.

# THE STATE OF ALABAMA— JUDICIAL DEPARTMENT
## THE COURT OF CRIMINAL APPEALS

*BUTLER*
*44536*

### CERTIFICATE OF JUDGMENT

**Criminal Appeals Case**         **CR-01-2408**

James Olen Simpson, Jr. v. State of Alabama (Appeal from Chambers Circuit Court: CC02-48).

Whereas, the appeal in the above cause having been duly submitted and considered, it is now hereby certified that on the 29th day of August, 2003, the judgment of the court below was affirmed.

**Witness, Lane W. Mann, Clerk,**
**Court of Criminal Appeals, this**
**17th day of September, 2003**

Clerk
**Court of Criminal Appeals**
**State of Alabama**

